United States District Court
Southern District of Texas

**ENTERED**

August 29, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEVIN BROWN, | § | |
| | § | |
| *Pro Se* Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-1756 |
| | § | |
| UNITED STATES POSTAL INSPECTION | § | |
| SERVICE, UNITED STATES POSTAL | § | |
| SERVICE, HARRIS COUNTY DISTRICT | § | |
| ATTORNEYS, OFFICE OF DEVON | § | |
| ANDERSON, HARRIS COUNTY | § | |
| SHERIFF'S OFFICE, HARRIS COUNTY | § | |
| OFFICE OF COURT MANAGEMENT, AND | § | |
| HARRIS COUNTY TAX ASSESSOR- | § | |
| COLLECTOR OFFICE OF MIKE | § | |
| SULLIVAN, | § | |
| | § | |
| Defendants. | § | |

OPINION AND ORDER GRANTING SUMMARY JUDGMENT

Pending before the Court in the above referenced cause, seeking damages and punitive damages for violations of the First, Fourth, Fifth and Fourteenth Amendments of the federal Constitution and 42 U.S.C. § 1983, "Title VI" of the Civil Rights Act of 1964,[1] and the "OJ Program Statute,"[2] is a motion for summary judgment (instrument #33) from Harris County Defendants Harris County District Attorneys, Office of Devon Anderson, Harris County

---

[1] Title VI, 42 U.S.C. § 2000d, provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Brown is black.

[2] The Court is unable to identify this statute.

-1-

Sheriff's Office, Harris County Office of Court Management, and Harris County Tax Assessor-Collector Office of Mike Sullivan (collectively, "Harris County Defendants").   Although the motion was filed on September 23, 2015, *pro se* Plaintiff Kevin Brown ("Brown"), proceeding *in forma pauperis*, has not filed a response.[3] Nor has he directed any discovery to Harris County Defendants according to them.

### Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   "Only facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment."   Id.

Where the nonmovant bears the burden of proof at trial, the movant must offer evidence that undermines the nonmovant's

---

[3] Defendants the United States Postal and United States Postal Service were dismissed on December 14, 2014. #30.

claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but does not have to, negate the elements of the nonmovant's case to prevail on summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).   "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994).   "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323.   The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir.

1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id., quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston*

*v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991).   The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13. The Court may not make credibility determinations. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009), *citing Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007).

The Court has no obligation to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Rather the nonmovant must identify evidence in the record and demonstrate how it supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

It is well established in the Fifth Circuit that "[a] federal court may not grant a 'default' summary judgment where no response has been filed." *Bradley v. Chevron U.S.A., Inc.*, No. Civ. A. 204CV092J, 2004 WL 2847463, *1 (N.D. Tex. Dec. 10, 2004), *citing Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). Nevertheless, if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary judgment. *Id.* at *1 and n. 2*, citing id.; see also Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003)(where no opposition is filed, the nonmovant's unsworn pleadings are not competent summary judgment evidence and movant's evidence may be accepted as undisputed). *See also Unum Life Ins. Co. of America v. Long,* 227 F. Supp. 2d 609 (N.D. Tex. 2002)("Although the court may not enter a 'default' summary judgment, it may accept evidence submitted by [movant] as undisputed."); *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996)("A summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence.").

For a no-evidence motion for summary judgment, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. If the nonmovant fails, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and summary judgment as a matter of law must be granted. *Id.* at 322-23.

### Key Allegations of Brown's Complaint (#1)

Brown, who rents a post office box that he claims gives him "effective consent to be on the [post office] property," alleges that since June 28, 2012 he was illegally arrested two times at a post office in Harris County, that his vehicle was seized and sold, and that a number of wrongful actions were taken against him for several months. Specifically he alleges that around 5 p.m. on June 28, 2012, when he was wearing gospel singer Ann Nesby's "Put It On Paper" t-shirt as he went to retrieve his mail from his post office box, his Ford Mustang GT suffered a flat tire in the post office parking lot because of exposed rebars erected with rusty iron by Supervisor Denise J. Raipe ("Raipe"). After Brown reported the problem to USPS, to avoid signing a tow-wrecker's ticket slip Raipe told Postal Police to falsely arrest Brown. Brown's Ford Mustang was seized, along with his cell phone. Postal Policeman Ibarra ("Ibarra"), unit # P2163, arrived

around 6 p.m. to investigate.  Ibarra then told Brown that Raipe
"is liable" and that Brown would be reimbursed after he filed a
postal accident claim.  Postal Policeman Gonzalez, unit #P1391,
arrived, illegally seized Brown's cell phone, and took it inside
the post office to Raipe.  Ibarra and Harris County Sheriff's
Office Deputy Deborah E. Nolen ("Nolen"), who arrived about 6:30
p.m. to interfere with the federal Postal Police, then deleted
Brown's pictures of the flat tire from his cell phone.  The
police investigating concluded there was no criminal activity
committed by Brown.  Nolen then illegally seized Brown's
identification and falsely arrested Brown for "manufacturing with
intent to deliver simulated controlled substance dial
antibacterial soap" despite a lack of probable cause.  Nolen's
handcuffing of Brown caused Brown "excruciating pain."  Ibarra
and Gonzalez watched this false arrest and made no effort to stop
it.  After Brown spent eight hours in jail, the case against him
was dismissed for lack of probable cause.

Brown claims that while he was in jail, Nolen, Ibarra,
Gonzalez, Assistant District Attorney Eric Kugler ("Kugler"),
Colleen Patrice Barnett, Clinton F. Greenwood ("Greenwood"), Kate
Dolan ("Dolan"), and Lynne W. Parsons ("Parsons") stole his Texas
Driver's License and refused to return it.

On July 13, 2012 Brown filed an Internal Affairs Division
complaint with Harris County Sheriff's Office against Nolen.  On

-8-

July 18, 2012, Nolen retaliated by filing another false charge under the same offense report, #HC1288269, for "criminal trespass" for trying to change the flat tire in the post office parking lot, and then raised the offense to a Class D misdemeanor by falsely claiming that Brown carried a crowbar weapon, which Brown insists did not exist.  After Brown spent six months in jail on the criminal trespass charge, that case was dismissed on April 30, 2013.

The complaint then states that Sheriff Adrian Garcia ("Garcia") was the policymaker for the Harris County Sheriff's Office with regard to the hiring, firing, training, and discipline of officers.  The Harris County Sheriff's Office allegedly unlawfully sold Brown's car.  Although Garcia was fully aware of the facts described above, he did not take any action against Postal Police Ibarra and Gonzalez or Harris County Defendants Kugler, Parsons, Dolan, Todd R. Keagle ("Keagle"), and Greenwood.  Nor did Harris County Office of Court Management take action against Eric Stewart Hagstette ("Hagstette"), Blanca Estel Villagomez ("Villagomez"), Jean Spradling Hughes ("Hughes"), and Jo Robin Brown.

Brown claims that these events caused him past and future pain, anxiety, loss of sleep, fear, embarrassment, anger, mental anguish, loss of enjoyment of life, false criminal charges appearing on his background check, loss of bail bond money paid

when Hughes unlawfully ordered Brown back to jail for breach of his two-year contract with T-Mobile, resulting in a collecting agency chasing him, and the loss of his vehicle, of his Driver's License, of personal property inside his car, and of a gift credit card stolen by law enforcement.

Brown states that he complained to Harris County Sheriff's Office-Internal Affairs Division and Harris County Tax Office about Nolen, Michael Lovell, and Manuel Martinez for use of excessive force in his handcuffing, unlawful detention, wrongful arrest, and violations of the First, Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution.  No discipline or corrective action of any kind was taken against these Defendants.  He also complained about Ed Wells to the Office of the Court.  Finally he charges that on October 2, 2012 the Harris County Tax Assessor-Collector Office of Mike Sullivan unconstitutionally brought about the transfer of title to or other "nonpossessory" interest in property belonging to Plaintiff

Brown claims that Raipe violated his First Amendment freedom of the press when she instructed Nolen to delete the pictures of his flat tire from his cell phone.  He also charges Harris County's Office of Court Administration (specifically Villagomez Hughes, and Jo Robin Brown), Harris County District Attorneys Parsons, Dolan, Greenwood, etc.), and Harris County Sheriff's Office (Nolen) with violating his First Amendment rights "by

prohibiting [Brown's] free exercise of baptise religious freedom of wearing the Ann Nesby 'PUT IT ON PAPER'! t-shirt to and from the post office encouraging people to get married before having sex as stated in the song 'Put It on Paper'!, by having plaintiff Kevin Brown falsely arrested. [*sic*]"

Brown also contends that Nolen and her co-deputies violated his Fourth Amendment rights when they arrested him without probable cause, searched him, and seized his property (including his Ford Mustang GT, Texas Driver's License, and cell phone). Also in violation of the Fourth Amendment they searched his cell phone and deleted the pictures of his flat tire.

The Office of Harris County Tax Collector-Assessor Mike Sullivan purportedly violated Brown's Fourteenth Amendment rights by depriving him of his property on October 2, 2012 by transferring his vehicle title without due process. Harris County Office of Court Management's Hagstette violated Brown's Fourteenth Amendment rights by depriving him of life, liberty, and property on July 18, 2012 when Hagstette "signed the probable cause found capias unlawfully as he fail[ed] to give me as the p.o. box renter equal protection of the law as no p.c.!" Brown accuses Hughes of violating his Fourteenth Amendment rights by issuing a writ signed by Harris County Sheriff's Office's C. Jersic, remanding Brown to custody in Jo Robin Brown's court, depriving him of life, liberty, and property without due process

of law on April 26, 2013.  He alleges that Postal Police Ibarra
and Gonzalez of conspiring with Nolen "to fail to keep [Brown]
from harm commonly referred to as Color of Law Abuse statute
[*sic*]" and to deprive him of his property by fabrication of
evidence in a postal police report claiming that Nolen arrested
Brown for driving with a suspended license.

Brown further claims that Parsons, Kugler, Keagle, Barnett,
Dolan, Patricia R. Lykes, and James Leitner of the Harris County
District Attorney's Office deprived Brown of his life, liberty,
and property by failing to file a motion to dismiss the false
criminal trespass complaint against him and causing him to spend
six months in jail.

Brown additionally alleges that Nolen violated Title VI of
the Civil Rights Act of 1964 and the "OJP Programs statute" by
putting "BLACK MALE" in the offense report.  Brown complains that
he was denied the benefits of service protection and subject to
discrimination by Harris County Defendants under programs and
activity funded by OJP.

Finally Brown asserts that Defendants "ratified" the actions
of the individual Defendants and did not have "the general orders
and written policies in place in the areas to prevent misconduct
discrimination, wrongful detentions and arrest, search and
seizures that would have prevented plaintiff's civil Rights
violations and OJP statute violations and Constitutional Rights

-12-

violations."

**Relevant Law**

Title 42 U.S.C. § 1983 does not grant substantive rights, but provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). It provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. *Id.*

Municipalities and other bodies of local government, which include counties, are "persons" within the meaning of § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978); *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221. 224 (5th Cir. 2008). "A municipality cannot be held liable *solely* because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell*, 436 U.S. at 690-91.

To state a claim for municipal liability under § 1983, a plaintiff must identify (a) a policy maker, (b) an official policy [or custom or widespread practice], and (c) a violation of

-13-

constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(a plaintiff must show that the unconstitutional conduct is attributable to the municipality through some official custom or policy that is the "moving force" behind the constitutional violation)(*citing Monell*, 436 U.S. at 694), *cert. denied*, 534 U.S. 820 (2001). The Fifth Circuit has defined an official policy for purposes of § 1983 as "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority.'" *Okon v. Harris County Hospital District*, 426 Fed. Appx. 312, 316 (5th Cir. May 23, 2011), *quoting Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985).[4] Alternatively, a policy may be "'a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'"

---

[4] When a policymaker commits the act at issue, that act may establish the policy if the policymaker is "unconstrained by policies imposed from a higher authority." *Okon*, 426 Fed. Appx. at 316, *citing Hampton Co. v. Nat'l Sur. LLC v. Tunica County*, 543 F.2d 221, 227 (5th Cir. 2008). In such a case the court must determine which official or government body has final policymaking authority for the local government unit regarding the action in dispute. *Id.*

*Id., citing id.*, and *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010)("A pattern of conduct is necessary only when the municipal actors are *not* policymakers")[, *cert. denied*, 131 S. Ct. 3059 (2011)].   Generally, "[a]llegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992).

"The governing body of the municipality or an official to whom that body has delegated policy-making authority must have actual or constructive knowledge of such a custom." *Okon*, 426 Fed. Appx. at 316, *citing Bennett*, 735 F.2d at 862.   "'Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information,'" while "constructive knowledge 'may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.'"   *Id., citing Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985).

Ratification can also be a basis for governmental immunity when an authorized policymaker affirms that in performing the challenged conduct, the employee was executing official policy.

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)("[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies.  If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").

Whether a governmental decision maker has final policymaking authority is a question of law.  *Pembauer v. City of Cincinnati*, 475 U.S. 469, 483 (1986).  "It has long been recognized that, in Texas, the county sheriff is the county's final policy maker in the areas of law enforcement, not by virtue of delegation by the county's governing body, but, rather, by virtue of the office to which the sheriff has been elected." *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990)(*citing Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980))(*citing Monell*, 436 U.S. at 694), *cert. denied*, 498 U.S. 1069 (1991); *Bennett v. Pippin*, 74 F.3d 578, 586 (1996), *cert. denied*, 519 U.S. 817 (1996).

The named defendants in this action are all entities of Harris County.  A suit against an individual in his official capacity is treated as a suit against the governmental entity of which the individual is an agent, an employee, an official or a representative.  *Wilson v. Dallas County*, Civil Action No. 3:11-

-16-

CV-879-L, 2014 WL 4261951, at *6 (N.D. Tex. Aug. 29, 2014), *citing Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus a suit against a state official in his or her official capacity is a suit against the state, itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)(holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Bennett v. Pippen*, 74 F.3d 578, 584 (5th Cir. 1996)(noting that a suit against a county official in his official capacity is a suit against the county "directly in everything but name").

A municipality may be liable for the failure of a policymaker to take precautions to prevent harm, provided that the omission is an intentional choice and not merely a negligent oversight. *Monell,* 436 U.S. at 694. Negligent training will not support a § 1983 claim against a municipality; nor is it sufficient to show that "injury or accident could have been avoided if an officer had better or more training." *Id.* Moreover the plaintiff must demonstrate that "the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.*

A municipality or local governmental entity cannot be liable under § 1983 on a theory of respondeat superior; it can only be liable for acts that are directly attributable to it through some official action or imprimatur. *James v. Harris County*, 577 F.3d

612, 617 (5th Cir. 2009), *cert. denied*, 558 U.S. 1114 (2010).  As noted, it can only be held liable under § 1983 if the plaintiff proves a constitutional violation and an official policy promulgated by the municipality's policymaker that was the moving force behind or the actual cause of the constitutional injury. *Id., citing Monell*, 436 U.S. at 694, and *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  The official policy must either be unconstitutional or have been adopted "with deliberate indifference to the known or obvious fact that such constitutional violations would result."  *Id., citing Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004), and *Piotrowski*, 237 F.3d at 579.

"Deliberate indifference" is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing of simple or even heightened negligence will not suffice"; it requires a plaintiff to show that "'in the light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'"  *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010)(*quoting City of Canton*, 489 U.S. at 390), *cert. denied*, 131 S. Ct. 2094 (2011).  "Usually

a plaintiff must show a pattern of similar violations, and in the case of an excessive force claim . . . the prior act must have involved injury to a third party." *Id.*; *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1959). "[A] single incident of an alleged constitutional violation resulting from the policy may serve as a basis for liability so long as that violation was an obvious consequence of the policy. . . . [A] pattern of misconduct is not required to establish obviousness or notice to the policymaker of the likely consequences of his decision." *Brown v. Bryan County, OK.*, 219 F.3d 450, 460 (5th Cir. 2000), *citing City of Canton*, 489 U.S. at 396 ("Where a section 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of constitutional rights of their citizens, the dictates of *Monell* are satisfied."). "The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997), *citing Fraire v. Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992).

Qualified immunity, an affirmative defense, protects government officials in their personal capacity performing discretionary functions not only from suit, but from "liability

for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, ___, 129 S. Ct. 808, 815 (2009). Because no individuals are sued in their individual capacities in this action, but instead all Defendants are entities of Harris County, qualified immunity is not an issue here.

To prevail on a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must show (1) that he was seized,[5] (2) that he suffered an injury, (3) which "resulted directly and only from the use of force that was excessive to the need, and (4) that the force used was objectively unreasonable." *Flores v. Palacios*, 391 F.3d 391, 396 (5th Cir. 2004). To decide whether the seizure was objectively reasonable, the court must ask if the totality of the circumstances justified that kind of search or seizure. *Id., citing Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). The objective reasonableness of the force used requires the court to balance the amount of force used against the need for that force. *Id.* at 399. The injury must "be more than a *de minimis* injury and must be evaluated in the context in which the

---

[5] Seizure may be shown "by means of physical force or show of authority" when the officer has "in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).

force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). *See, e.g., Tarver v. City of Edna*, 410 F.3d 745, 751-52 (5th Cir. 2005)(finding plaintiff failed to show requisite injury because he did "not allege any degree of physical harm greater than *de minimis* from the handcuffing"); *Glenn v. City of Tyler*, 22 F.3d 307, 315 (5th Cir. 2001)(concluding that "handcuffing too tightly, without more, does not amount to excessive force"). Only substantial psychological injuries are sufficient to meet the injury element of a claim for excessive force under the Fourth Amendment. *Flores*, 381 F.3d at 397-98.

Regarding a false arrest claim,[6] "a police officer must make a determination of probable cause before he causes any significant pretrial restraint of liberty." *Martin v. Thomas*, 973 F.2d 449, 453 (5th Cir. 1992). Probable cause exists when the facts within the officer's knowledge and the facts of which he has reasonably reliable information would be sufficient to believe that the suspect was committing or had committed an offense. *United States v. Morris*, 477 F.2d 657, 663 (5th Cir. 1973); *Beck v. Ohio*, 379 U.S. 89, 91 (1964). *See also Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004)("Probable

---

[6] Under Texas law for a claim of false imprisonment a plaintiff must show "(1) willful detention, (2) without consent, and (3) without authority of law." *Davila v. U.S.*, ___ F.3d ___, 2012 WL 1337387, *10 (5th Cir. Apr. 3, 2012), *quoting Martinez v. English*, 267 S.W. 3d 521, 529 (Tex. App.--Austin 2008)(*citing Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W. 502, 506 (Tex. 2002)).

cause exists when the totality to the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect has committed or was committing an offense."). In deciding whether probable cause exists, police officers are not required to be perfect, nor do they have to err on the side of caution "out of fear of being sued." *Martin*, 973 F.2d at 453. The Fifth Circuit, *id.*, quoted *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964). When false arrest claims are brought against a county, as here, the plaintiff must allege and prove that the County Defendants had defective policies and provided improper and inadequate training for officers regarding investigating a complaint, questioning a civilian, and effecting an arrest. *Muniz v. Davis*, No. A-13-CV-666-LY, 2014 WL 4259385, at *10 n.5 (W.D. Tex. Aug. 27, 2014).

> "Whether an arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it-- whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."

A claim for false arrest does not depend upon the validity of each individual charge, but on the validity of the arrest as a whole; if there is probable cause for any of the charges made, the arrest is supported by probable cause and the claim for false arrest fails. *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995).

A plaintiff may not obtain punitive damages in a suit under § 1983 from a municipality. *Kentucky v. Graham*, 473 159, 167 n.13 (1985), *citing Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), and *Smith v. Wade*, 461 U.S. 30 (1983).

The Supreme Court looks to "the common law to identify those governmental functions that were historically viewed as so important and vulnerable to interference by means of litigation that some form of absolute immunity from civil liability was needed to ensure they are performed 'with independence and without fear of consequences.'" *Rehberg v. Paulk*, 132 S. Ct. 1497, 1503 (2012), *citing Pierson v. Ray*, 386 U.S. 547, 554 (1967). The functions that it identified as entitled to some form of absolute immunity from civil damages liability are (1) "actions taken by legislators within the legitimate scope of legislative authority"; (2) "actions taken by judges within the legitimate scope of judicial authority"; (3) "actions taken by prosecutors in their role as advocates"; and (4) "the giving of testimony by witnesses at trial." *Id*.

In *Pierson*, 386 U.S. at 554-55, the Supreme Court that the common-law absolute immunity of judges for "acts committed within their judicial jurisdiction" was preserved under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976), *citing Bradley v. Fisher*, 13 Wall 335 (1872). Judges generally have absolute immunity from suit and from damages. *Davis v. Tarrant County, Texas*, 565 F.3d

214, 221 (5ᵗʰ Cir.), *cert. denied*, 558 U.S. 1024 (2009).   In

*Forrester v. White*, 484 U.S. 219, 226-27 (1988), the Supreme

Court explained,

> "[T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have . . . . If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits.  The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication."

*Davis*, 565 F.3d at 221, *quoting Forrester*.  Judicial immunity can

be overcome only where the actions taken were not in the judge's

judicial capacity or where the actions although judicial in

nature, are taken in the absence of all jurisdiction.   *Id.,*

*citing Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).  The "absence

of all jurisdiction" exception references situations in which a

judge acts purely in a private and non-judicial capacity."

*Henzel v. Gerstein*, 608 F.2d 654, 658 (5ᵗʰ Cir. 1989).  *See also*

*Bradley*, 13 Wall at 351 ("[J]udges of courts of superior or

general jurisdiction . . . are not liable to civil actions for

their judicial acts, even when such acts are in excess of their

jurisdiction, and are alleged to have been done maliciously or

corruptly.'"), *quoted in Stump v. Steward*, 435 U.S. 349, 355-56

(1978).  Whether an act is judicial in nature is determined by

"whether it is a function normally performed by a judge" and

whether the parties "dealt with the judge in his judicial capacity." *Id.* at 222.  The focus is on the nature and function of the act, not on the act itself, i.e., "the particular act's relation to a general function normally performed by a judge." *Id., quoting Mireles*, 502 U.S. at 13.  The Fifth Circuit applies a four-prong test for this determination:  "(1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.  *Id.* at 222-23, *quoting Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005).  Charges that the judge acted in bad faith or with malice do not defeat judicial immunity.  *Id.* at 221*, citing Forrester*, 484 U.S. at 226-27.[7]

A county judge acting in his or her judicial capacity to

---

[7] Noting that at times drawing the line between truly judicial acts and acts that have been done by judges outside their judicial capacity has been difficult, the Fifth Circuit opined,  "In determining whether a particular act performed by a judge is entitled to absolute immunity, a court must draw a distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform.'"  *Id.* at 221-22*, citing id.* and *Huminski v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2005)("At the margins it can be difficult to distinguish between those actions that are judicial, and which therefore receive immunity, and those that happen to have been performed by judges, but are administrative, legislative, or executive in nature.").

enforce state law does not act as a municipal official or law maker for purposes of establishing a policy. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992).[8] *See also Kreuger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995)("A local judge acting in his or her judicial capacity is not considered a local government official whose actions are attributable to the county.")(*citing Johnson v. Moore*). Because a state trial judge is not a policy maker, her action cannot constitute official policy, and a section 1983 claim against her, for acts taken within her judicial capacity which are absolutely immune, must be dismissed. *Price v. Harris County*, Civ. A. No. H-09-1966, 2009 WL 3233423, at *2 (S.D. Tex. Oct. 7, 2009).

Under Texas law, "when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted." *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir.), *cert. denied*, 522 U.S. 828 (1997). Like the common-law immunity of judges, that of a prosecutor "include[s] concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the

---

[8]   When acting in his or her administrative capacity, a judge's actions may constitute county policy under *Monell*. *Johnson v. Moore*, 958 F.2d at 94, *citing Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980)(distinguishing judge's administrative duties, actions pursuant to which may constitute county policy under *Monell*).

possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman*, 424 U.S. at 422-23.  The Supreme Court explained, *id.* at 424-25,

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court.  The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.  Such suits could be expected with some frequency for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.  Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law.

Moreover, "[f]requently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation.  Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials."  *Id.* at 435-26.  *Imbler* holds that a prosecutor's conduct in "initiating a prosecution and in presenting the State's case" enjoys absolute immunity.  *Id.* at 431.  *See also Kreuger v. Reimer*, 66 F.3d at 76-77 (A district attorney "is absolutely immune in a civil rights suit in any actions taken pursuant to his role as State advocate in preparing for the initiation of judicial proceedings or for trial.").  Thus a

prosecutor is absolutely immune for his actions in a probable-cause hearing before the initiation of a prosecution. *Burns v. Reed*, 500 U.S. 478, 490-91, *citing Imbler*, 424 U.S. at 431.[9]

Witnesses, including police officers, are absolutely immune from liability for their testimony in judicial proceedings. *Briscoe v. LaHue*, 460 U.S. 325 (1983). Grand jurors are absolutely immune from liability for actions arising out of their service, as are jurors acting within the scope of their duties. *Imbler*, 424 U.S. 422-23; *White v. Hegerhorst*, 418 F.2d 894, 895 (5th Cir. 1969), *cert. denied*, 398 U.S. 912 (1970); *Freeze v. Griffith*, 849 F.2d 172, 174-75 (5th Cir. 1998).

Derived judicial immunity shields individuals who act pursuant to explicit directions or procedures of a judge, such as a court clerk, a bailiff, or a sheriff involved in judicial process. *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001). *See also Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981)("Clerks

---

[9] A prosecutor does not have absolute immunity for his administrative duties and investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings. *Burns,* 500 U.S. at 494-96. Where a prosecutor "functions as an administrator rather than an officer of the court," he is entitled only to qualified immunity. *Imbler*, 424 U.S. at 431 and n.33. "When a prosecutor performs investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect one and not the other," and therefore the prosecutor "'has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.'" *Buckley v. Fitzsimmon*, 509 U.S. 259, 273-74 (1993), *quoting Hampton v. Chicago*, 484 F.3d 602, 608-09 (7th Cir. 1973).

of Court "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction . . . ."). Absolute immunity is also extended to executive officials when they are engaged in quasi-prosecutorial functions. *Butz v. Economou*, 438 U.S. 478, 515–17 (1978).

In *Guedry v. Ford*, 431 F.2d 660 (5th Cir. 1970), the Fifth Circuit held that private persons alleged to have conspired with immune state officials could not be held liable under § 1983 because they were not conspiring with persons acting against color of law against whom a valid § 1983 claim could be stated. That doctrine of derived immunity was abolished in *Sparks v. Duval County Ranch Co.*, 604 F.2d 976 (5th Cir. 1979)(en banc)(abolishing doctrine of derivative immunity for private persons who conspire with immune state officials), *cert. denied* 449 U.S. 943 (Mar. 24, 1980), and *aff'd*, 449 U.S. 24 (Nov. 17, 1980). Under some circumstances, the existence of a conspiracy between a private individual and an immune state actor, such as a prosecutor or a judge, may give rise to an actionable claim against the private individual. *Id.* *See also Henzel v. Gerstein*, 608 F.2d 654, 659 (5th Cir. 1979)(*citing Sparks*, but dismissing the case because allegations of conspiracy between private individuals and state officials were wholly conclusory and unsupported). *See also Adickes v. S.H. Kress & Co.*, 398 U.S.

-29-

144, 152 (1970)("Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute.  To act 'under color' of law does not require that the accused be an officer of the State.  It is enough that he is a willful participant in joint activity with the State or its agents . . . .").   "By the same reasoning, coconspirators act under color of law and can be sued for damages in a section 1983 action when they involve a judge in their plot, regardless of whether the judge can be brought to justice for his part in the scheme." *Sparks*, 604 F.2d at 982-83.  Thus private individuals who conspire with state officials are no longer shielded by derivative immunity.  *Cook v. The Houston Post*, 616 F.2d 791, 794  (5th Cir. 1995); *Richardson v. Fleming*, 651 F.2d 366, 371 (5th Cir. 1981).

**Harris County Defendants' Motion for Summary Judgment (#33)**

Harris County Defendants, all divisions or departments of the Harris County government, which can only be subject to municipal liability for their own actions and cannot be liable under a *respondeat superior* theory for the wrongful actions of an employee, observe that Brown has broadly asserted four claims against them:  (1) violation of the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution; (2) conspiracy; (3) violation of Title VI, Civil Rights Act of 1946;

and (4) violation of the OJP Statute.

Harris County Defendants assert six reasons why their motion for summary judgment should be granted: (1) Brown lacks admissible evidence to show that he was injured because of an officially adopted policy or a persistent widespread practice or custom of Harris County, which was known to the relevant policy maker and was the moving force that caused a violation of Brown's constitutional rights; (2) Brown lacks admissible evidence to defeat judicial immunity and/or derived judicial immunity related to actions of the judge and court personnel acting on an order of the judge during Brown's criminal prosecution; (3) Brown does not have admissible evidence to defeat prosecutorial immunity related to the actions of the Harris County District Attorney's Office during Brown's criminal prosecution; (4) Brown lacks admissible evidence to prove that any Harris County Defendant conspired to violate Brown's constitutional rights or to discriminate against him; and (5) Brown lacks admissible evidence to prove that any Harris County Defendant discriminated against Brown based on his race, color, or national origin.

Defendants assert that Brown, whose claims center on his arrest and criminal prosecution in Harris County courts, makes conclusory allegations under a heading, Policy, Practices, Procedure, Custom and Ratification" that they "ratified" the actions alleged in the complaint and vaguely alleged, "Defendants

does not have the general orders and written policies in place in the area to prevent misconduct, discrimination, wrongful detentions and arrest, search and seizures that would have prevented plaintiff's civil rights violations and OJP Statute violations and Constitutional violations [*sic*]." Orig. Complaint, Ex. 1 at 29-30. The Defendants are divisions or departments of Harris County government and thus merely nominal defendants. Brown must, but cannot, show that Harris County, itself, through its own actions, by means of an official policy or widespread custom, known to the official policy maker, that caused injury to Brown. The County cannot be vicariously liable under § 1983 for the negligence or intentional misconduct of others.

Defendants submit affidavits of experienced and qualified experts who opine on and describe the rules, policies and procedures of the different County Defendants: Affidavit of Brian A. Rose regarding the Harris County District Attorney's Office (Ex. 2); Affidavit of Ed Wells regarding the Harris County Office of Court Management (Ex. 3); Affidavit of Peggy Martinez regarding the Harris County Tax Assessor/Collectors Office (Ex. 4); and Affidavit of Jay O. Coons, Ph.D. regarding the Harris County Sheriff's Office (Ex. 5). Brown has no evidence of an official policy of any of the County Defendants that caused the violation of Brown's rights. Other than conclusory allegations,

Brown fails to identify a formal policy or a widespread custom of any Harris County Defendants that was the moving force behind his injury, and he has no evidence of any policymaker having knowledge of such a custom or policy.

The allegations against Judge Jean Spradling Hughes, Judge of Harris County Criminal Court at Law No. 15, and Judge Jo Robin Brown, Judge of Harris County Criminal Court at Law No. 12, relate to their official actions or inactions connected to Harris County Office of Court Management, for which they are entitled to absolute judicial immunity.  Moreover, under *Byrd v. Woodruff*, 891 S.W. 2d 689, 707 (Tex. App.--Dallas 1994, writ dism'd by agreement), "[I]n Texas, judicial immunity applies to officers of the court who are integral parts of the judicial process, such as a prosecutor performing typical prosecutorial functions, court clerks, bailiffs, constables issuing writs, and court-appointed receivers and trustees."  *In accord Hawkins v. Walvoord*, 25 S.W. 3d 882, 890 (Tex. App.--El Paso 2000, pet. denied)(holding that the court administrator selecting an attorney for representation of an indigent and the sheriff taking the attorney into custody pursuant to court directive were entitled to judicial immunity.); *In re Foust*, 310 F.3d 849, 855 (5th Cir. 2003)(because judges are absolutely immune, and because "[e]nforcement of a court order is closely intertwined with the judicial function, court personnel . . . charged with enforcing a valid court order, such as a

-33-

sheriff executing a facially valid judicial order . . . in a
constitutionally permissible manner . . . should not face
liability for the warrant's unlawfulness)".[10]  Thus "[a]bsolute
immunity can extend to government officials who perform quasi-
judicial functions," with this Court to "determin[e] whether a
person is entitled to quasi-judicial immunity" based on a
"'functional approach' that focuses on 'the nature of the
function performed, not the identity of the actor who performed
it.'"  *Foust*, 310 F.3d at 855, *citing Thomas v. City of Dallas*,
175 F.3d 358, 362 (5th Cir. 1999), and *Imbler*, 424 U.S. at 431.

Defendants maintain that County Defendants are entitled to
summary judgment because the events of which Brown complains were
state actions or lack of actions that were intimately involved
with that judicial process which is protected by judicial
immunity.

Furthermore, regarding the alleged violations of Brown's
constitutional rights by the Harris County District Attorney's
Office and individual assistant district attorneys, including
their failure to file a motion to dismiss the cases against him
earlier than they did and to return his property, these
prosecutors, who are state actors, are not liable because of the

---

[10] *See Foust*, 310 F.3d at 855 ("Law enforcement officers have
absolute immunity for enforcing the terms of a court order but
only qualified immunity for the manner in which they choose to
enforce it."), *citing Mays v. Sudderth*, 97 F.3d 107, 109-10, 114
(5th Cir. 1996)

-34-

Eleventh Amendment, which bars a state's citizens from filing suit against the state or its agencies in federal courts, and sovereign immunity, which bars suit against a sovereign in its own courts without its consent. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-66 (1989)("The Eleventh Amendment bars . . . suits ["seek[ing] a remedy against the state for alleged deprivations of civil liberties]" unless the State has waived its immunity . . . or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity."); *Cozzo v. Tangipahoa Parish Council--President Government*, 279 F.3d 273, 280 (5th Cir. 2002).

In addition, the public policy and law clearly establishing absolute prosecutorial immunity for prosecutors participating in functions "intimately associated with the judicial process" have been clearly articulated in *Imbler*, 424 U.S. 409 1976), and in *Van de Kamp v. Goldstein*, 555 U.S. 335, 349 (2009).  Such prosecutorial immunity protects a prosecutor even when he acts in bad faith or with ulterior motives, as long as he acts within the scope of the District Attorney's prosecutorial functions. *Clawson v. Wharton County*, 941 S.W. 2d 267, 272 (Tex. App.--Corpus Christi 1996).

Harris County Defendants are therefore entitled to summary judgment because those actions of which Brown complains were part of the District Attorney's criminal prosecution and were state

actions, not those of Harris County.

Regarding Brown's claim under Title VI, 42 U.S.C. § 2000d, whose protection extends no further than the Fourteenth Amendment,[11] Brown's failure to produce admissible evidence of discrimination against him by a County Defendant on the basis of his race, color or nationality defeats his claim.

While Brown does not identify what he refers to by the "OJP Program Statute," Exhibit E to Defendants' motion, is a copy of some information attached to Brown's Complaint which states that Title VI and the "OJP Program Statute" both prohibit discrimination on the basis of race, color, national origin, sex and religion by the State and local law enforcement agencies that receive financial assistance from the Department of Justice. It also states, "Individuals also have a private right of action under Title VI and under the OJP Program Statute. . . . However, you must first exhaust your administrative remedies by filing a complaint with DOJ if you wish to file in Federal Court under the OJP Statute." As noted, Brown presents no admissible evidence of discrimination against him by a County Defendant based on his race, color or national origin, but provides only conclusions and opinions.

In sum, Harris County Defendants claim they are entitled to

---

[11] *See United States v. Fordice*, 505 U.S. 717, 732 n.7 (1992)(claim under Fourteenth Amendment requires showing of discriminatory purpose).

summary judgment because Brown does not have the evidence required to prove a claim under § 1983 against any of them.

## Court's Decision

The Court agrees with the Harris County Defendants' recitation of the law and their application of it to the facts as well as the evidence, or lack thereof, here.  Based on the Court's presentation of the law, Harris County Defendants' briefing and evidence, and Brown's far too conclusory pleadings and his failure to allege supporting facts, no less provide competent evidence to support any of his claims or to controvert Defendants', the Court

ORDERS that Harris County Defendants' motion for summary judgment (#33) is GRANTED.  Final judgment will issue by separate document.

**SIGNED** at Houston, Texas, this  29th  day of  August , 2016.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE